**PETER ANDERSON, Plaintiff,**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS**
**d/b/a VIRGIN ISLANDS POLICE DEPARTMENT,**
**RAMON DAVILA, KENNETH MAPP, ROBERT SOTO,**
**and ELTON LEWIS, Defendants.**

Civil No. 1996-118

District Court of the Virgin Islands

Division of St. Croix

June 9, 1998

LEE J. ROHN, Law Offices of Rohn & Cusick, St. Croix, USVI, *for plaintiff*.

ERNEST F. BATENGA, Asst. Attorney General, St. Croix, USVI, *for all defendants*.

CARL J. HARTMAN, III, ESQ., New York, NY., for *Kenneth Mapp, defendant*.

MARK L. MILLIGAN, ESQ., St. Croix, USVI, *for Elton Lewis, defendant*.

TRESTON E. MOORE, ESQ., Moore & Dodson, St. Thomas, USVI, *for Ramon Davila, defendant*.

Plaintiff's Motion to Reconsider Court's Order of November 11, 1997 DENIED. Defendant Davila's Motions to Quash Subpoenas issued to United States Customs Service GRANTED and that these subpoenas QUASHED. Plaintiff's Attorney SANCTIONED.

## MEMORANDUM

MOORE, *Chief Judge*.

This matter is before the Court on plaintiff Peter Anderson's ["Anderson"] motion to reconsider this Court's Order of November 21, 1997, and on defendant Ramon Davila's ["Davila"] motions to quash several of plaintiff's subpoenas and for sanctions. For the reasons expressed herein, the Court will deny Anderson's motion to reconsider and will grant Davila's motions to quash the subpoenas and for sanctions.

236

## I. FACTS

On or about January 22, 1996, Peter Anderson, then a captain with the Virgin Islands Police Department ["VIPD"] filed a complaint with the Equal Employment Opportunity Commission ["EEOC"] and the Virgin Islands Department of Labor. Anderson named the Commissioner of Police, Davila, as a respondent in a racial and national origin employment discrimination suit. On January 31, 1996, Anderson retired from the VIPD.

On February 22, 1996, the *St. Croix Avis* published a story which stated that Anderson was filing an employment discrimination lawsuit against the Government of the Virgin Islands and Davila for various claims related to employment discrimination. The *Avis* also named the attorney who would be representing Anderson's attorney in the suit.

On September 6, 1996, Lee J. Rohn filed the complaint in this action on behalf of Anderson against the Government of the Virgin Islands, doing business as the Virgin Islands Police Department, Davila, Kenneth Mapp, Lieutenant Governor of the Virgin Islands, Robert Soto, Assistant Director of the Virgin Islands Narcotics Strike Force, and St. Croix's Chief of Police, Elton Lewis.

## II. MOTION TO RECONSIDER

Anderson has requested that the Court reconsider its decision to dismiss Anderson's claim of negligent infliction of emotional distress, Count V of plaintiff's first amended complaint. The Court dismissed the count because it failed to allege any physical harm which Anderson suffered as a result of negligent conduct by the defendants, a required element of a claim for negligent infliction of emotional distress. *See, e. g., Mingolla v. 3M*, 893 F. Supp. 499 (D.V.I. 1995); *see also Purjet v. H.O.V.I.C.*, 22 V.I. 147 (D.V.I. 1986); RESTATEMENT (SECOND) OF TORTS § 313.

Anderson argues that the Court's assessment was incorrect as Count V specifically incorporated paragraph 25 of the amended complaint which alleged that "as a result of the actions [of the defendants], Plaintiff has suffered . . . physical injuries." The Court was unable to find and Anderson has not pointed to any other description or even mention in the amended complaint of physical harm or injuries resulting from defendants' alleged conduct.

Since Rule 9 of the FEDERAL RULES OF CIVIL PROCEDURE does not require that the tort of negligent infliction of emotional distress be plead with particularity, Anderson's bare assertion of "physical injuries" is enough to plead this element of the tort adequately. Anderson's complaint, however, still fails to allege the other required element of a claim of negligent infliction of emotional distress, namely, the foreseeability that the actions of the defendants would result in plaintiff's alleged physical injuries.[1]

■ The cause of action of negligent infliction of emotional distress is defined, in relevant part, as the following:

1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

(a) *should have realized* that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
(b) from facts known to him *should have realized* that the distress, if it were caused, might result in illness or bodily harm.

RESTATEMENT (SECOND) OF TORTS § 313 (emphasis added); *see also Purjet*, 22 V.I. at 147. In order to recover on a claim of negligent infliction of emotional distress, not only must Anderson demonstrate that he suffered a physical injury as a result of the defendants' actions, but also that it was reasonably foreseeable that defendants' actions would result in Anderson's injuries. Anderson has failed to allege any basis for such a finding in either his first or amended complaint.

---

[1] The Court's previous statement that "foreseeability is not part of the element of physical harm of negligent infliction of emotional distress" applies only to the actual infliction of physical injuries. *See* Memorandum Opinion at 20 (Nov. 11, 1997). A plaintiff, at least by the time of filing the complaint, must have suffered an injury and cannot merely allege that it is foreseeable that sometime in the future plaintiff will suffer an injury resulting from defendant's negligent conduct. This is distinguished from the *required* element for the tort of negligent infliction of emotional distress that it must have been foreseeable that defendant's actions would result in plaintiff's injuries.

Anderson also argues that even if the claim has not been adequately pleaded, the Court should have dismissed the claim without prejudice with leave to amend. Plaintiff may amend its pleading once as a matter of course subject to certain restrictions. *See* FED. R. CIV. P. 15(a). After filing a first amended complaint, the plaintiff may only amend the pleadings again by leave of court. *Id.* Although this leave "shall be freely given when justice so requires," the decision to grant leave is left solely to the discretion of the trial court. *See Foman v. Davis* , 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).

Anderson should have been aware of any viable claim about the foreseeability of the impact of defendants' actions on plaintiff and any reasonable likelihood that defendants' actions would result in injury to him when Anderson filed his original complaint over a year and a half ago in September of 1996. Anderson was afforded the opportunity to amend his complaint once as a matter of course and then again by leave of court in December, 1998. In neither his first amended or second amended complaint did Anderson include the necessary allegations of foreseeability of the harm resulting from defendants' conduct.[2]

Although the Rules dictate that leave should be freely given where justice so requires, this Court must also be mindful of the unfair burden imposed on opposing parties if plaintiff is allowed to repeatedly amend his complaint after receiving guidance from the Court. *See Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981) ("The trial court's discretion under Rule 15, however, must be tempered by considerations of prejudice to the non-moving party, for undue prejudice is 'the touchstone for the denial of leave to amend.'" (quoting *Cornell & Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). If the Court were to grant Anderson leave to amend, defendants will be forced to file yet another round of answers and commence new avenues of discov-

---

[2]Notably, after receiving the Court's ruling of November 11, 1997 dismissing Count V alleging negligent infliction of emotional distress for failure to include the necessary element of physical injury, Anderson still failed to elaborate the claim in his second amended complaint. He merely repeated the original Count V word for word, except for adding the words "including physical damages." The Court cannot determine what would constitute physical "damages."

ery based on new allegations raised by plaintiff a year and half into the litigation.

Furthermore, plaintiff's counsel has the obligation of understanding and researching relevant case law and rules to determine the proper pleading requirements. The Court is only responsible for ruling on the sufficiency of the claims put forth by counsel. The Court is not required to allow plaintiff to file pleadings that were at best inartfully drawn, receive explicit directions and guidance from the Court, and then file corrected pleadings, especially when the requirements and the facts supporting such allegations should have been known to counsel from the date of the first filing.

■ Accordingly, Anderson's motion to reconsider will be denied because the claim for negligent infliction of emotional distress continues to lack the elements necessary to sustain this cause of action. Plaintiff will not be given another chance to correct the deficiency, since to allow another amendment would unfairly burden defendants at this late stage of the litigation. *See Riley v. Taylor*, 62 F.3d 86, 90 (3d Cir. 1995) ("Permissible justifications [for denying leave to amend] include: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment.").

## III. MOTIONS TO QUASH SUBPOENAS

Defendant Ramon Davila has asked this Court to quash subpoenas duces tecum issued by Anderson to the United States Customs Service ["Customs Service"]. Davila contends that the subpoenas are defective for failure to conform to Rule 45 of the FEDERAL RULES OF CIVIL PROCEDURE and are an impermissible intrusion into personnel files of a law enforcement officer which may be subject to an assertion of privilege by either the Customs Service or Davila.

### 1. Anderson's Document Subpoenas Served on the United States Customs Service

On January 16, 1997, Anderson served a subpoena duces tecum accompanied by a Notice of Deposition Duces Tecum on the "United States Customs Department, Human Resources Management Department" ["January Subpoena"]. The subpoena was

served on the Customs Office in Washington, D.C., and commanded the recipient to produce

1. All personnel files concerning Ramon Davila;
2. All documents evidencing any complaints filed against Ramon Davila;
3. All evaluations of Ramon Davila for the past ten (10) years;
4. All documents evidencing any reprimands or other discipline against Ramon Davila.

(Defendant Davila's Suppl. Mem. in Support of His Motions to Quash Subpoenas, Ex. B (May 15, 1997) ["Davila Memorandum"]. The recipient was informed that the documents should be produced to the Law Offices of Rohn & Cusick, counsel for plaintiff, in St. Croix. The subpoena and notice of deposition were signed by plaintiff's counsel, Lee Rohn, Esquire, and bore the caption of this case under the heading of the District Court of the Virgin Islands, Division of St. Croix. (*Id.*)

Anderson served a second document subpoena accompanied by a Notice of Deposition Duces Tecum on March 25, 1997 ["March Subpoena"]. This second document demand was directed to "Mr. George Weise, Commissioner, United States Customs Service" and bore the caption of this case under the heading of the United States District Court for the District of Columbia. Anderson significantly broadened his request for documents in the March Subpoena, requesting that the following be produced to the offices of plaintiff's counsel in St. Croix:

1. All documents indicating the current employment status, position and salary of Ramon Davila.
2. All documents evidencing any disciplinary or personnel actions involving Ramon Davila from 1985 to the present.
3. All documents evidencing the policies or procedures of United States Customs Agents with respect to their personal or professional conduct.
4. All documents evidencing any per diem or salary or other pay paid to Ramon Davila from 1991 to the present.
5. Any fitness for duty or performance evaluations for Ramon Davila from 1985 to the present.

6. All documents evidencing any investigations concerning in anyway Ramon Davila.
7. All documents evidencing any investigations Ramon Davila has been involved in from 1992 to the present.
8. All documents received concerning Ramon Davila from 1992 to the present.
9. The personnel file of Ramon Davila.

(Davila Memorandum, Ex. D.) It appears that the March Subpoena was initially served on the Customs Service through its Miami Office of the Associate Chief Counsel. Plaintiff's counsel has represented to the Court that she later served the Customs Service at its Washington, D.C. location.

## 2. Requirements of Federal Rule of Civil Procedure 45

Before reaching the validity of Anderson's subpoenas served on the Customs Service, a review of the requirements of Rule 45 is necessary. Each subpoena will then be examined to determine its validity.

A district court cannot issue a subpoena duces tecum to a non-party for the production of documents located in another district. *See Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1406 (5th Cir. 1993), *cert. denied,* 510 U.S. 1073, 127 L. Ed. 2d 77, 114 S. Ct. 882 (1994); *Kupritz v. Savannah College of Art & Design,* 155 F.R.D. 84, 87 (E.D. Penn. 1994). This prohibition, however, does not preclude a party to an action pending before the District Court of the Virgin Islands from obtaining documents from a non-party located in another district, i.e., the Customs Service in Washington, D.C.

A non-party may be compelled to produce documents pursuant to Rule 34(c), which states that a "person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45." In turn, Rule 45(a)(2) requires that "if separate from a subpoena commanding the attendance of a person, a subpoena for production or inspection shall issue from the court for the district in which the production or inspection is to be made." Rule 45 also allows the Court, on timely motion, to quash or modify a subpoena if it requires a non-party to travel to a place more than 100 miles from the place

where that non-party resides, is employed, or regularly transacts business. FED. R. CIV. P. 45(c)(3)(A)(ii). Reading Rules 34 and 45 in tandem, a non-party can be compelled to produce documents within certain geographic limitations, usually no more than 100 miles from the non-party's location.

As a result of the 1991 Amendments to Rule 45,[3] an attorney need not be a member of the bar of the district court issuing the subpoena to the non-party. Pursuant to Rule 45(a)(3),

> [a]n attorney as officer of the court may also issue and sign a subpoena on behalf of (A) a court in which the attorney is authorized to practice; or (B) a court for a district in which a deposition or production is compelled by the subpoena, if the deposition or production pertains to an action pending in a court in which the attorney is authorized to practice.

Simply put, so long as the attorney is authorized to practice law before the district court in which the underlying action is pending, e.g., the District Court of the Virgin Islands, that attorney can issue and sign subpoenas on behalf of any United States district court, e.g., the United States District Court for the District of Columbia. *See* FED. R. CIV.P. 45, 1991 Amendment, *Cmts. to Subdiv. (a)*.

The 1991 Amendments to Rule 45 also included safeguards to protect recipients of subpoenas against possible abuse of the broadened powers of attorneys under the revised rule. As well as identifying the name of the district court under whose authority the subpoena is issued, the title and civil number of the action, and the name of the court in which the action is pending, each Subpoena also must "set forth the text of subdivisions (c) and (d)" of that rule. FED. R. CIV. P. 45(a)(1)(A)-(D). Subdivisions (c) and (d) are entitled "Protection of Persons Subject to Subpoenas" and "Duties in Responding to Subpoenas," respectively. The purpose of the inclusion of these subdivisions in *every* subpoena is to ensure

---

[3] In 1991, Rule 45 of the FEDERAL RULES OF CIVIL PROCEDURE was substantially revised with the specific purpose of "facilitating access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties" and "to facilitate service of subpoenas for depositions or productions of evidence at places distant from the district in which an action is proceeding." FED. R. CIV. PROC. 45, 1991Amendment, *Purposes of Revision*.

that the recipient of the subpoena is fully aware of both her own obligations in responding to the subpoena, of the duties of the attorney in properly executing the subpoena, and the options a recipient may exercise in contesting a subpoena.

### a. January Subpoena

■ The January Subpoena issued by Anderson is defective on numerous grounds. First, plaintiff's counsel issued the subpoena with the heading of the District Court in St. Croix and directed it to an entity located far outside the geographic reach of this Court's civil jurisdiction. The subpoena also commanded the recipient to produce documents to plaintiff's counsel's office located in St. Croix. This Court cannot order a non-party outside of its jurisdiction to produce documents to a place within this district. Furthermore, plaintiff's counsel cannot direct the recipient of a subpoena to produce documents to a place outside the geographic limitations of Rule 45. The subpoena also failed to include the text of subdivisions (c) and (d) of Rule 45 as mandated by the rule.[4] Because of these serious deficiencies, Anderson's January Subpoena directed to the United States Customs Department will be quashed.

### b. March Subpoena

■ Unlike the January Subpoena, plaintiff's counsel properly captioned the March Subpoena. This subpoena was directed to the Commissioner of the Customs Service located in Washington, D.C., and indicated that it was being issued under the auspices of the United States District Court for the District of Columbia. This is proper procedure pursuant to Rule 45, as amended in 1991. As discussed earlier, an attorney may sign a subpoena issued from a court in which the attorney is *not* licensed to practice so long as the subpoena relates to an action pending in a court in which the attorney *is* licensed to practice. This is the procedure for attempting to obtain documents or depositions from non-parties located outside this Court's geographic authority in civil matters.

---

[4] From the Court's records, it appears that every other subpoena issued by plaintiff's counsel in this matter also failed to include the text of Rule 45(c) and (d). The validity of these other subpoenas, however, is not before the Court at this time.

■ Aside from the correct heading, however, the March Subpoena suffers from the same defects as found in the January Subpoena. The March Subpoena demands that documents be produced to the offices of plaintiff's counsel in St. Croix, a location not within the geographic limitations of the rules. The March Subpoena also fails to include the text of subdivisions (c) and (d) of Rule 45.

In addition, the March Subpoena was served on the Customs Service office located in Miami, Florida. To properly serve the Commissioner of the Customs Service, whose office is located in Washington, D.C., with a subpoena issued pursuant to the jurisdiction of the United States District Court for the District of Columbia, plaintiff's counsel was required to serve the Commissioner in Washington, D.C. Although plaintiff's counsel has stated to the Court that proper service was effected on the Commissioner in Washington, D.C., the initial faulty service reflects the overall sloppiness and lack of adherence to the clear dictates of Rule 45 that pervade the subpoenas issued by plaintiff's counsel. For all of the foregoing reasons, the March Subpoena is also defective and will be quashed.

### 3. Procedure by Which Documents May Be Obtained from the United States Customs Service

Plaintiff's counsel was advised by the United States Customs Service in two letters that her subpoenas failed to comply with the procedures set forth in Title 19 of the Code of Federal Regulations, section 103.22(c), which explains how a party must request documents from the Customs Service where the Customs Service is not a party to the litigation. (*See* Davila Memorandum, Ex. C (Letter from Customs Service to Attorney Rohn, Jan. 31, 1997) and Ex. H (Letter from Customs Service to Attorney Rohn, Apr. 23, 1997)). Plaintiff's counsel was advised of numerous defects in her subpoena for documents directed to the Customs Service after her initial request in January. Although the Customs Service explicitly directed plaintiff's counsel to the appropriate sections of the Code of Federal Regulations and even described what must be included in the subpoena before the Customs Service would address the

merits of the request,[5] Attorney Rohn nevertheless issued the March Subpoena with the same procedural defects as the original subpoena.[6]

The United States Customs Service has adopted its own regulations concerning when and how internal documents will or will not be released. Presumably these regulations were enacted with the special needs and concerns of this federal agency in mind. The Court is reluctant to intrude on the internal procedures of the Customs Service and will decline to do so at this time. Counsel for plaintiff is strongly encouraged to follow the requirements of 19 C.F.R. § 103.21 et seq. if Anderson continues to desire documents from the Customs Service.

### 4. Required Notice to Other Parties

■ Davila also objected to the issuance of the two subpoenas to the Customs Service because of Anderson's failure to serve a copy of these subpoenas on Davila. Anderson disputes this contention, stating that opposing counsel was served with a copy of the subpoenas. Although it is unclear from the parties' arguments, it seems possible that both Anderson and Davila have misread the requirements of Rule 45. The Rule does not mandate mere notice of the service of any subpoena duces tecum but rather requires *prior notice* of such commanded production of documents. FED. R. CIV. P. 45(b)(1). Before serving any subpoena, a party is required to provide notice to all other parties in the litigation to allow them the equal opportunity to review and obtain the materials at the same

---

[5] After noting that plaintiff's subpoena failed to comply with the requirements contained in 19 C.F.R. § 103.22(c), the Customs Service advised plaintiff's counsel that "copies of the summons and complaint in [the underlying] action [must] be attached to the subpoena, along with an affidavit or statement setting forth a summary of the documents and their relevance to the subject proceeding." (Letter from Kristin L. Dubelier, General Attorney, U.S. Customs Service, to Attorney Lee Rohn, at 1 (Apr. 23, 1997), Attached as Ex. H to Davila Memorandum; Letter from Kristin L. Dubelier, General Attorney, U.S. Customs Service, to Attorney Lee Rohn at 1 (Jan. 31, 1997), attached as Ex. C to Davila Memorandum.)

[6] Plaintiff's counsel represented to the Court that the Customs Service simply wanted a court order before it would comply with Anderson's subpoena. Plaintiff has not submitted any documentation indicating the Customs Service's willingness to comply if such an order was issued. Furthermore, even pursuant to the requirements of section 103.21(i) of 19 C.F.R., a request for documents must be "appropriately made" in accordance with section 103.21(c) and call for production of documents for *in camera* inspection by the Court.

time as the party who served the subpoena. The Court points out this requirement to make sure that it is followed by all counsel in the future.

## IV. SANCTIONS

Rule 45 requires "a party or an attorney responsible for issuance and service of a subpoena to take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." FED. R. CIV. P. 45(c)(1). The rule also requires the Court to enforce this duty and to impose sanctions when an attorney or party breaches this duty. *Id.; see also* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2463 (1995).

As noted in previous discussion, both the January and March subpoenas issued by Attorney Rohn on behalf of Anderson contain numerous defects, including failure to include the text of Rule 45(c) & (d), failure to properly serve the subpoenas, and demand to produce the documents to a location beyond the 100-mile limit allowed under the federal rules. Although these defects may seem merely procedural in nature, they are the safeguards mandated by Rule 45 that are intended to prevent the abuse of the subpoena process. The cost for the broadened powers granted to attorneys by the 1991 Amendments was the increased procedural requirements designed to protect those receiving the subpoenas, especially those who are not parties to the litigation. Morever, aside from the failure to comply with Rule 45, Attorney Rohn has made no effort to follow the requirements of 19 C.F.R. § 103.21. Even after she was advised directly by the Customs Service how to go about seeking to obtain documents from the Customs Service, counsel blithely issued another subpoena containing the same defects as the first and blatantly ignored the federal regulations.

The Court will not tolerate such abuses of the subpoena process and failure to follow the Federal Rules of Civil Procedure. Accordingly, the Court will sanction Attorney Rohn and award Davila his costs and attorney's fees associated with quashing the subpoenas issued to the Customs Service.

247

## V. CONCLUSION

For the reasons stated above, Anderson's motion to reconsider will be denied. Davila's motion to quash the subpoenas issued by Anderson to the United States Customs Service will be granted. Furthermore, this Court will sanction Attorney Rohn in the amount of costs and attorney's fees associated with Davila's efforts to quash these subpoenas. Davila will be required to submit an affidavit of his costs and reasonable attorney's fees for defending against these subpoenas. These sanctions are being imposed in an effort to impress upon all counsel the need for strict adherence to the rules of procedure and to·encourage careful attention to detail in these matters.

### ORDER

For the reasons set forth in the accompanying Memorandum, it is hereby

ORDERED that Plaintiff's Motion to Reconsider the Court's Order of November 11, 1997, is DENIED. It is further

ORDERED that Defendant Davila's Motions to Quash the Subpoenas issued to the United States Customs Service are GRANTED and that these subpoenas are QUASHED. It is further

ORDERED that Plaintiff's Attorney shall be SANCTIONED in an amount equal to Defendant Davila's costs and attorney's fees associated with quashing these subpoenas. Defendant Davila shall file an affidavit of costs and reasonable attorney's fees for defending against the subpoenas issued to the United States Customs Service.

ENTERED this 9th day of June, 1998.